Good morning, you may proceed. Good morning, and may it please the court and counsel, my name is Mark Meyer. I'm appearing on behalf of appellate Jennifer Chastain, and I'm sharing this oral argument with Mr. McKelvey, who represents Scott Haren. Mr. Haren and Ms. Chastain were charged and convicted of conspiracy to distribute methamphetamine. The arguments or the issues I want to argue this morning and were raised on appeal relate to the jury instructions that were given in this case, and three different instructions were talked about in the appellant's brief, and I want to focus on one at this point because oral argument time always flies by really quickly. So the instruction in question was number seven, and it's based on an Eighth Circuit uniform instruction, and it pertains to ways that testimony of witnesses can be impeached. Counsel, does our case of Baldenegro-Valdez resolve it? I don't believe so, Your Honor. Tell us why not, because it approved that model instruction. Well, thank you, Your Honor. There's nothing necessarily wrong with the instruction under normal circumstance, under in a typical case. I think what's different about this case is that the two of the witnesses, two of the cooperating witnesses, had already entered guilty pleas, they'd been sentenced, and they were given reductions for providing substantial assistance. So under those circumstances, to give the last paragraph of the instruction in question where the jury is advised about the process that's undertaken in order for a cooperator to get a sentence reduction, which involves, you know, the prosecutor making a motion and then the judge approving the motion and granting a sentence, indicates, you know, tells the jury what has to happen in order for a cooperator to get a reduction. And then, in this case, the prosecution in their case in chief asked the cooperators questions that brought out the fact that they had already received a sentence reduction. But, you know, when you say that it tells them what substantial assistance can entail, it doesn't exactly tell them that it can come only in the form of testimony. For example, you could get substantial assistance for assisting the government in other ways, I presume, like, for instance, being part of a sting operation or something of that nature. So I guess I'm asking you, pinpoint to me where it indicates that it's some sort of vouching for the testimony if the jury, the instruction tells the jury that a judge has to approve the reduction, whatever it's for, right? The judge, the prosecutor makes a motion, the judge approves it, thereby implying, at least, that the judge found the witness to be credible, or that the witness did something that the judge approved. Is that enough, though? Is that enough to say? I mean, because the fact of the matter is you could provide substantial assistance, whether it be cooperating with the government in some sort of, you know, sting operation or whatever, and still be a bad person, still be a non-credible witness. And so I guess my question, is that really enough? That a non-credible... You could be a non, you could be a bad person, right? They often, the police often cooperate, law enforcement often cooperates with bad people, right? To put together sting operations, drug deals, to catch other bad people. And so you could still be a bad person, you could still be a non-credible witness and get a substantial assistance reduction. Well, in this particular case, at least in the instance of the first cooperator who testified, it was made clear that the time cut, the substantial assistance award was based on the same cooperation that was involved in the incident case. In other words, it was all part of one process. And so, in particular, that there was a cooperation agreement that testified in court pursuant to the agreement, and there was a prior reduction. And so it was all the same agreement. So that would, I think, it didn't specifically say what it was for, but it suggests that it's all part of the same batch of information. So that, I think... Counsel, you asked for only the first sentence to be given, right? Yes, Your Honor. Oh, and don't you want the sentence that says you can give the testimony of these witnesses such weight as you think it deserves? That's a good one for you. Yeah, that should be in there too. Okay, that's okay. Proceed. The stuff in the middle. Okay, go ahead. All right. So, in any event... Well, again, your objection is that the instruction somehow lends the court's imprimatur to this witness's testimony, or what? Yeah, exactly, Your Honor. Because the witness has already received a sentence reduction, and the only way that can be done is if the court, after a prosecution motion, finds that there should be a reduction. And the question asked to the witness is, are you hoping that your sentence can be further reduced? So, under those circumstances, what's supposed to be a cautionary instruction about the credibility can be turned into like a sword by the prosecution to basically vouch for the credibility of the witness. The two other instructions that were cited in the brief—one is regarding the elements of conspiracy to distribute, that the executive order of the prosecution or understanding, there should be clarification that the understanding has to be distributed methamphetamine for resale. Because in this instance, Ms. Chastain, there was testimony that she handed one of the cooperators an ounce of methamphetamine on a couple of occasions. Counsel, you've seen our long list of cases that basically approve that, and I guess it gets to be shorthand, but couldn't you get the point across an argument to the jury? Well, we tried that, of course, but it would be nice—I think it's an accurate statement of the law that unless there's an agreement that the distribution's going to be for resale as opposed to, well, you're here, I'll give it to you, sort of thing. I don't care what you do with it. The other instruction that is discussed relates to clarifying that merely knowing about the existence of a conspiracy does not make a member or person of it. This was instruction number 13, and the reason that is important, I think, is the preceding sentence in the instruction is a person who has no knowledge of a conspiracy but happens to act in a way that advances some purpose does not become a member. I think it's important in a correct statement of the law that, likewise, merely knowing of the existence of a conspiracy does not make a member or person. Is that adequately covered, though, in the next couple of paragraphs? Because at least at one point—I think it might be the following paragraph—it says that to be a member of a conspiracy, an individual must, and I'm quoting, voluntarily and intentionally join it. That would seem to cover—I mean, it's not precisely the language you wanted, but that would seem to cover your concern. Voluntary and knowing, I suppose, are pretty close, but not exact would be my response. So I'm going to reserve the rest of my time for rebuttal, if I may. Very well, you may. Mr. McKelvey, good morning. You may proceed. Good morning, Your Honors. May it please the Court, Counsel Dennis McKelvey, Grinnell, Iowa, representing Defendant or Appellant Scott Heron. Mr. Heron has presented two issues for review by this Honorable Court. One of them regards sufficiency of the evidence, asking the Court to make a determination whether the evidence presented to the jury was sufficient to convict him. With the Court's indulgence, I would like to leave that to the briefing and concentrate on the sentence that was rendered in this case, which was a life without parole, if you will, because there is no parole in the federal system. The Court that we appear in this morning is arguably the loftiest Court in the world, say perhaps the Supreme Court of the United States, in upholding the law and justice. Justice in the United States of America stems from the Constitution of the United States, which primarily is designed to allow liberty to human beings in many forms. And one of those, of course, is to be free from imprisonment. Over the years, many courts have made determinations regarding all kinds of issues related to liberty. In our view, the Court and the defense and prosecution bars of the United States are the guardians of liberty. For those of us who have been around for a period of time and practiced in the federal court system before the federal sentencing guidelines were in effect, we are somewhat disturbed, often dismayed, by the results that occur by application of the federal sentencing guidelines, which in our view, in part, were put in place for the sole purpose, and I know there are other purposes, but one of the purposes was to avoid judicial discretion. Fortunately for us, the United States Supreme Court has taken care of some of those issues with Booker and other rulings that allow the court to make a decision regardless of the federal sentencing guidelines. However, there are many judges, including the judge that ruled in this case, who we consider to be a guideline judge. This judge in this case is one of the most capable, intelligent judges I've ever practiced in front of, so it's not an issue of whether the judge knows the law, follows the law, but one of the things that we believe has happened in this case is that the federal sentencing guidelines have put someone in prison by the nature of the conduct that they engaged in after the criminal conduct, and basically, I refer to a statement that's made by the judge in the sentencing of this case where she says, and this quote I'm reading from now is on page 17 of the government's brief, if you just look at what Mr. Heron chose to do, had he not obstructed justice, had he pled guilty, he would have had a five-level swing, which means a swing down. He would have been a level 38 criminal history one with a sentencing range 235, which is just under 20 years, to 293 months. He chose to obstruct justice. He chose to put the government to their proof, and he lost. The evidence against him was overwhelming. Well, one of the things that you can clearly see that Mr. Heron did make a mistake by writing a letter to one of his fellow defendants that resulted in him getting a two-level increase for obstruction of justice. There's no argument about that. However, there's also a three-point increase for the fact that he chose to go to trial, exercise his right to a jury trial. He did that, and of course, we've heard this many times. I'm sure this court has heard many times that why should someone be The point here is that it appears, absent the federal sentencing guidelines and the conduct post-criminal conduct, that the judge probably would have, arguably it appears, given Mr. Heron a sentence of 235 to 293 months. Therefore, it's arguable that the judge followed the guidelines. The guidelines turned out to be higher, and he ended up getting a life sentence without parole, which we respectfully submit in this case is just too much. Can we honestly say that life in prison without parole for a person who is a criminal history category one, which I concede again that the judge addressed by saying that Mr. Heron probably isn't really a criminal history category one because he has some prior things that are outside of the province of the federal sentencing guidelines because they're too old, and then she uses the term arbitrary to describe the federal sentencing guidelines in that respect. So on one hand, the arbitrary nature of the guidelines helps Mr. Heron. On the converse, the arbitrary nature of the guidelines hurts him, and it really hurts him when it takes him from a criminal history category 38 to a 44, which is actually above the highest level, and he has to come back down to a 43. For the sake of just thinking about this in the terms of what the court has the power to do when looking at things, we have a person here who was not actually personally caught with any drugs. All the drugs that were found in this case amount to 13 grams or ounces, I believe it was. None of that in the possession of Mr. Heron. But he gets 2.7 kilograms attributed to him. Correct. So he got all, and then all this six pounds was ice, supposedly, but again, they found no ice. It was all from a co-conspirator or co-defendant's testimony that they saw it. So there are just certain things about this that start to say we now have a person that is going to prison for life, criminal history category one, with a whole bunch of things added on top of it by the federal sentencing guidelines. Again, the judge renders a legal sentence, but we respectfully submit to the court that the sentence itself is an abuse of discretion, a sentence that's more than necessary, more than sufficient to satisfy the goals of the sentencing guidelines. Are there any particular findings that were deficient on the part of the district court judge? I mean, is there something the district court should have done, or is this purely an argument, this is just disproportionate, we shouldn't get this sentence? Your last supposition is correct, Judge. From a purely legal point of view, the judge gave us a legal sentence. In other words, the judge did not err in finding that your client had obstructed justice by exercising his right to go to trial? Primarily, that's correct. But also, overall, the judge has the right. We did a motion for the judge to address all that. She's very careful and articulate. It's just that somehow, it just sort of seems wrong to say that life without parole is a sentence sufficient but not more than necessary to satisfy the sentencing guidelines. You put your point, in other words, you make the argument at the outset. I think it's a point that Judge Calton made in his en banc cases. One hates to put it this way, but a different judge might have done differently. It's almost the luck of the draw. We don't like to speak in those terms, but there again, on what basis could we say that this sentence is unreasonable? Well, the only basis that you can say it on, Judge, is that this court has the power to look at the overall facts of the case, how the sentence came to pass, and say that this is an abuse of discretion. Thank you, Judge. Well, that's your argument. We rarely do that, I guess. That doesn't mean that it should not be done or could not be done in any given case, but there again. Well, Your Honor, respectfully, we're before the court with a limited amount of time to say something, and basically there's nothing more to say really than what the development of the law is and what happened here, and ask the court to make a review to see whether the sentence that was handed down is just or not.  Thank you, Judge. Thank you, Your Honor. We'll hear from the government. Good morning, sir. You may proceed. Thank you, Your Honor. May it please the court, Mr. Meyer, Mr. McKelvey, with respect to the- Your name is, let's see, I want to make sure I pronounce it correctly. Why don't you pronounce it for me? It's Vavracek, Tim Vavracek from the- Difficult, but thank you. Yeah. Cedar Rapids, Iowa. Thank you. Your Honors, with respect to the three issues in the case spread across the two defendants, it would be my intent to focus on Ms. Chastain's arguments concerning the jury instructions. Of course, I'm happy to answer any questions the court may have about any of the issues. I'll start right in on that question. What specific- I know we've, I think our case law has approved that, but what specific purpose does the objected to language accomplish? What's the purpose of the language that Mr. Meyer objects to? With respect to the last paragraph of instruction number seven, which is the Chastain only objects to the middle two sentences, those- At trial, she said only keep the first sentence, right? She objected to all the rest of that paragraph. That is correct. Those sentences simply tell the jury, in neutral terms, how cooperation works in the federal system. Number one, the prosecutor can file the motion if the prosecutor thinks there is substantial assistance. Number two, if the motion is filed, the judge decides whether to reduce, and if so, how much to reduce it. And then, something that is in many respects favorable to the defendant, tells the jury, the jury is going to decide how much weight to give the cooperator's testimony. In the government's view, instruction number seven is not a vouching instruction. It's an anti-vouching instruction. When we go and read the whole instruction, as the court's cases say we should do, it begins by talking about the credibility of witnesses and how they may be, quote, impeached. That's how it begins. And then, as a couple other examples, the last sentence of the fourth full paragraph of instruction number seven, whether or not their testimony may be influenced by their desire to please the government or to strike a bargain with the government with respect to their own situation will be for you to determine. And that's, again, emphasized in the last sentence. In terms of, at the end of the day, this instruction as a whole is saying to the jury, be careful with these sorts of witnesses. It's an anti-vouching instruction in our view. Now . . . . . . Interesting way you put it. It basically tells the jury, be careful about listening to these witnesses' testimony. That's correct. That's how we understand this sort of instruction in there. And, you know, judges and instructions don't vouch. The defendant doesn't cite any cases where a jury instruction was held to be vouching. Under this court's cases, vouching is usually a prosecutor in opening or closing, regrettably, in the heat of the moment, saying something along the lines of referring to facts that aren't in evidence, implying the truthfulness of a witness, implying some guarantee of truthfulness, or expressing a personal opinion about the credibility of the witness. You know, counsel, I think that his argument, or Ms. Chastain's argument, was a little imprecise. But I think the argument is essentially that the jury instruction itself doesn't vouch. When you combine the jury instruction with what happened at trial and the testimony at trial, then it has the effect of making the testimony more believable or more credible. So it's not vouching itself. It just has the effect of elevating that testimony. What's your response to that? Our response to that is, under this court's cases, there is nothing impermissible about asking a cooperating witness about their understanding of the plea agreement. Of the cases that we've cited, Judge Benton mentioned one of them, which is the Baldenegro-Valdez case, which approves of the language in the instruction. Although, to your point, Judge Benton, I don't think the argument that Ms. Chastain has here was squarely presented in that case. But I think that case gets us most of the way. But then, to your point, Judge Strauss, the McClellan case we cite in our brief says, and citing a series of other Eighth Circuit cases, evidence of the existence, the terms, and the witness's understanding of a plea or witness immunity agreement is not vouching. Taken as a whole, we believe this instruction fairly, neutrally, and accurately submits an issue of witness credibility to the jury. Unless there are any other questions about that, I'll move on to instruction number 12. With respect to instruction number 12, here, Ms. Chastain asked for an extra phrase in one of the elements, that is, that the distribution should also be, quote, for resale. As Judge Benton pointed out, this formulation of the elements has been approved in a series of cases. We cite Jackson, Green, Trejo, and Sanchez for this. I think, thinking about this, what Ms. Chastain really wanted here, it would seem, would be a separate buyer and seller type instruction, a defensive instruction, because that's what that resale point would go to. But the cases that talk about buyer-seller don't apply here. The district court was not asked to give a buyer-seller instruction, but more to the point, one would not be appropriate, because under this court's cases, the district court doesn't abuse its discretion when you have a case like this, where you have multiple transactions, not an isolated sale, and quantities that are well above user quantities of methamphetamine. I would remind the court that here, Ms. Chastain, one of the cooperators testified that she went out to Las Vegas to help repackage six pounds of meth into smaller quantities and then drive it back to Iowa, and then would distribute ounce quantities to cooperators. Nakes and Schultz testified to that in ounce quantities, and so on and so forth. This case is a far cry from the Boykin case from a few years ago, where under a sufficiency of the evidence challenge, a single sale of a half ounce of marijuana to a customer was held to be insufficient. On the last instruction, instruction number 13, this is the language requested by Mr. Meyer for his client about mere knowledge. The effect of mere knowledge would not be enough, and we would agree, Judge Strauss, to your question. Really, in our view, what the defendant wanted here was the inverse of what the judge gave. The judge expressed it in positive terms, what you must find. You must find that the defendant voluntarily and intentionally agreed to join in the conspiracy, and said that multiple times in the instructions. And under this court's case law, the court was not required to then state it again in alternative terms here, in inverse negative terms. So your argument is sort of the one I raised, which is that there's nothing wrong with the instruction they proposed. I mean, it's an accurate statement of the law. It's just already covered. That's absolutely correct, Your Honor. Alternatively, we argue with respect to all the instructional issues that any error would be harmless. As Mr. McKelvey noted today, reading that portion of the sentencing, the district court judge, at least with respect to Mr. Heron, characterized the evidence as overwhelming. In addition to having these four cooperating witnesses from the inside, the government was able to corroborate these by flight records, casino records, that are also text messages. So unless the court has any questions about any of the other issues in the case, that would conclude my argument. I would note with respect to the issue of obstruction, the defendant is not alleging any procedural error. It is purely a question of substantive reasonableness. And the defendant did not receive obstruction because he went to trial. He received obstruction for two affirmative acts that he took anticipating and after the federal charges and trying to pin the blame on some of the folks that were testifying against him. Unless the court has any other questions, I will yield the balance of my time. Thank you. Thank you. Does Mr. Meyer have rebuttal time? Suppose time has expired. Pardon? Would you like a couple of minutes, Mr. Meyer, for rebuttal? Apparently you used all of your time in your opening argument. Well, if you want, we'd give you two minutes, but if you're sorry, if you're... And before his time starts, I find myself deeply chagrined that I overlooked the fact that both you and your colleague, Mr. McKelvey, were appointed under the Criminal Justice Act. And we want you to... The court wants you to know that we deeply appreciate your willingness, and lawyers like you, to accept these assignments. As Mr. McKelvey said, this is a hall of justice, and without people who are willing to make that a hall of justice, we would not be able to do our duties adequately. And we thank both of you for what you've done. Well, thank you. My pleasure, Your Honor. So I want to go back to instruction number seven, and reiterate that the purpose of that instruction is a cautionary instruction. What factors should a jury consider in order to weigh the credibility of witnesses under certain circumstances? And it's basically the language that I asked the court to strike. Under normal circumstances, would not be objectionable. There's nothing wrong with the jury knowing that sort of thing. But in this particular case, or this kind of case, where the cooperators have already testified and received a substantial assistance, that's when talking about what process needs to be undertaken in order for the judge to make a determination that substantial assistance reduction should be given. And where it's brought out that they've already received a reduction in the same set of circumstances, and testifying about the same topic, that's where it's a problem. And with respect to the harmless heir argument, you know, that one of the cooperators testified that Ms. Chastain went to Las Vegas and helped package, she thought that Chastain helped package some methamphetamine. Well, Nikas was one of the cooperators that had already received a reduction. So, what we're trying to avoid here is having a situation where what's supposed to be a cautionary instruction, actually, in effect, under the circumstances, is vouchers for the credibility of cooperators. So, thank you very much. Very well. We thank all counsel for their presentations and arguments in these cases. And the cases are now submitted, and we will take them under consideration.